IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02264-RM-KLM

PATRICK W. IMESON, an individual resident of Colorado,

     Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company, doing business as Mr. Cooper, and
U.S. BANK N.A., Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-J,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Motion to Dismiss First Amended Complaint** [#28] (the "Motion").  Plaintiff filed a Response [#44] in opposition to the Motion [#28], Defendant filed a Reply [#46], and Plaintiff filed a Surreply [#47].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1, the Motion [#28] has been referred to the undersigned for a recommendation regarding disposition.  *See* [#41].  The Court has reviewed the Motion, the Response, the Reply, the Surreply, the entire case file, and applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#28] be **GRANTED in part and DENIED in part**.

- 1 -

**I. Background**[1]

On November 11, 2006, Plaintiff originated a $1,400,000 money mortgage loan (the "Imeson Loan") with Bank of America for the purchase of a property located at 800 Mill Street, Unit 302, Aspen, Colorado (the "Property"). *Am. Compl.* [#26] at 2. The Imeson Loan was secured by a Deed of Trust recorded November 20, 2006. *Id.* At the time, Plaintiff was married to non-party Victoria Barrena ("Ms. Barrena"), who was not a signatory to the Imeson Loan documents and never became a signatory or co-obligator to the Imeson Loan. *Id.* In November 2010, Plaintiff fell behind on loan payments and entered into a loan modification agreement with Bank of America. *Id.* at 3. Plaintiff alleges that, in November 2013, Bank of America transferred the servicing of the Imeson Loan to Defendant Nationstar Mortgage LLC, doing business as Mr. Cooper ("Nationstar"). *Id.* At that point, the Imeson Loan was in default because of overdue payments. *Id.* Bank of America then, purportedly, assigned the Promissory Note [#1-1][2] to Defendant U.S. Bank N.A. ("U.S. Bank"). *Id.* Plaintiff asserts that Defendants have failed to produce any original documents of the transfer or the original Promissory Note [#1-1]. *Id.*

---

[1] All well-pled facts from the Amended Complaint [#26] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[2] Plaintiff states in the Amended Complaint [#26] that Exhibits A-D were attached, but he neglected to do so. However, it is obvious that he refers to the same four exhibits attached to the initial Complaint [#1], and therefore, despite Plaintiff's clerical error, the Court considers Exhibits A-D [#1-1, #1-2, #1-3, #1-4] as incorporated into the Amended Complaint [#26]. "In evaluating a motion to dismiss, we may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

On April 6, 2017, Plaintiff and Ms. Barrena's marriage was officially dissolved. *Am. Compl.* [#26] at 3.  An Order of Dissolution was entered in Pitkin County, incorporating a Separation Agreement [#1-2] between Plaintiff and Ms. Barrena.  *Id.*  Under the terms of the Separation Agreement [#1-2]:

> Wife shall refinance this property, so Husband's name is removed from all encumbrances associated with this property.  If wife does not refinance the property by September 1, 2020, the house shall be immediately listed for sale . . . Wife shall assume and be solely responsible for any liens and encumbrances against the property except the judgment liens noted below as husband's sole responsibility, as well as all outstanding obligations (taxes, insurance, etc.).

*Id.*; *see also Ex. B, Separation Agreement* [#1-2] at 4.  The Separation Agreement [#1-2] also provided that Ms. Barrena was to completely indemnify Plaintiff as to any and all liability associated with the Property.  *Id.*  Neither Defendant was a party to the divorce proceedings or the Separation Agreement [#1-2].  *See generally id.*

On August 6, 2018, Plaintiff and Defendant Nationstar entered a Loan Modification Agreement [#1-3], rolling all unpaid, past-due interest into the principal of the Imeson Loan and altering several substantive terms of the Promissory Note [#1-1].  *Am. Compl.* [#26] at 4.  At this point, the Property had already been conveyed to Ms. Barrena, but she was not a party to the Loan Modification Agreement [#1-3], and the Separation Agreement [#1-2] did not establish her as a co-obligator to the Imeson Loan.  *Id.*  In August 2019, Defendant U.S. Bank commenced foreclosure proceedings on the Property in Pitkin County after Plaintiff defaulted on his payment obligations.  *Settlement Agreement* [#21-4] at 3.[3]  Ms. Barrena paid all sums required by Defendant Nationstar to prevent the

---

[3] The Settlement Agreement [#21-4] is an attached document to Plaintiff's prior Response [#21] to the prior Motion to Dismiss [#14].  "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  However, when a document is referred to in the complaint and is central to the plaintiff's claim, the Court has

foreclosure sale from proceeding and began making monthly payments on the Imeson Loan to prevent future foreclosure proceedings. *Id.*

Ms. Barrena then filed a civil action in November 2020 against Defendants, arguing that the Loan Modification Agreement [#1-3] between Plaintiff and Defendant Nationstar was a novation which rendered the Deed of Trust unenforceable. *Settlement Agreement* [#21-4] at 3. Plaintiff avers that Ms. Barrena's filing of the lawsuit made sensitive details regarding the Imeson loan and Plaintiff's payment history public information. *Am. Compl.* [#26] at 5. Plaintiff avers that Defendants failed to seek a protective order in the case, failed to advise Plaintiff of the case, and violated the details of the Promissory Note [#1-1] by engaging in detailed communications with Ms. Barrena about the Imeson Loan. *Id.* Additionally, Plaintiff states that on July 7, 2021, he was advised of the lawsuit and asked to give a declaration concerning the Loan Modification Agreement [#1-3] and Deed of Trust. *Id.* at 6. Plaintiff declared that the Deed of Trust, "will remain an encumbrance on the property unless and until the Note, as modified by the Loan Modification Agreement, is paid in full." *Id.* at 6.

On November 30, 2021, Ms. Barrena and Defendants reached a settlement without admitting the merits of any claim or defense. *Am. Compl.* [#26] at 6; *see also*

---

discretion to consider the document as part of the pleadings. *See, e.g.*, *Prager v. LaFaver,* 180 F.3d 1185, 1188–89 (10th Cir.1999). Plaintiff refers to the Settlement Agreement [#21-4] in both the Amended Complaint [#26] and the Response [#44]. *See Am. Compl.* [#26] at 5-8; *Response* [#44] at 7, 17-18. As with other documents, Plaintiff failed to attach the Settlement Agreement [#21-4] to the present Amended Complaint [#26] or the present Response [#44], but references the document several times, and uses the Settlement Agreement [#21-4] in furtherance of his argument that Defendants induced Ms. Barrena to breach her contract with Plaintiff. *See id.* Additionally, neither party disputes the Settlement Agreement's [#21-4] authenticity. As such, the Court will consider its contents for purposes of resolving the present Motion [#28].

*Settlement Agreement* [#21-4] at 3.  Per the Settlement Agreement [#21-4], Ms. Barrena cured the past due defaulted payments and Defendant U.S. Bank released the Deed of Trust from the Property.  *Id.*  The Settlement Agreement [#21-4] expressly provides:

> Any claims Nationstar or U.S. Bank has or may have against Imeson, including claims to recover amounts owing on the Loan Modification Agreement after application of the Settlement Payment, are not waived or released by the Defendants against Imeson by this Agreement.

*Settlement Agreement* [#21-4] at 4.

Plaintiff alleges that he did not learn of the settlement between Ms. Barrena and Defendants until he was denied a business loan based on a report filed by Defendant Nationstar on January 30, 2022, with a credit reporting agency ("CRA").  *Am. Compl.* [#26] at 7.  Plaintiff asserts that he had no knowledge that Ms. Barrena breached her obligations per the Separation Agreement [#1-2] (to re-finance the Imeson Loan or sell the Property) at that point, and thus, no reason to believe he was still responsible for paying the Imeson Loan.  *Id.*  Plaintiff alleges that he contacted Defendant Nationstar to request information regarding the report to the CRA and was told that "he was not considered an authorized party on the Imeson Loan."  *Id.* at 8.  Plaintiff avers that Defendants' failure to notify him that he owed payments on the Imeson Loan, which Plaintiff believed to be the responsibility of Ms. Barrena since 2017, and the ensuing report to the CRA were contrary to the explicit provisions of the Promissory Note [#1-1].  *Id.* at 7.

On February 15, 2022, Defendant Nationstar recorded a release of the Deed of Trust in Pitkin County.  *Am. Compl.* [#26] at 8.  On April 19, 2022, Defendant Nationstar sent a monthly statement to Plaintiff, showing his past due balance of over $10,000.  *See Ex. 4, Statement* [#1-4]. On May 3, 2022, Defendant Nationstar sent invoices for loan payments to counsel for Plaintiff.  *Am. Compl.* [#26] at 9.  On August 3, 2022, Defendant

Nationstar filed an additional report with the CRA, claiming that Plaintiff was late on his payments for the Imeson Loan. *Id.* Plaintiff subsequently filed disputes with the CRA regarding the reports by Defendant Nationstar, which Defendants have allegedly failed to further investigate. *Id.*

On August 8, 2022, Plaintiff requested from Defendants documents such as the original Promissory Note [#1-1] to validate Defendant U.S. Bank's status as note holder and Defendant Nationstar's status as loan administrator, entitled to enforce the Imeson Loan. *Am. Compl.* [#26] at 10. Defendants allegedly refused to provide such documents to Plaintiff. *Id.* Plaintiff avers that because of the "materially false" and "misleading" reports to the CRA, he has suffered business losses and damage to his credit. *Id.* Additionally, Plaintiff asserts that Defendants have sought to impose "thousands of dollars in late fees and interest without cause." *Id.*

Based on the foregoing, Plaintiff brings this action asserting five claims for relief. First, Plaintiff seeks a declaratory judgment, pursuant to Colo. Rev. Stat. § 13-51-101, that Defendant U.S. Bank is not the note holder entitled to enforce the Imeson Loan and that Defendant Nationstar is not validly authorized to administer the Imeson Loan. *Am. Compl.* [#26] at 10. Plaintiff alleges that the Imeson Loan was not properly transferred from Bank of America to Defendants, and thus seeks declaratory relief. *Id.*

Second, Plaintiff asserts a violation of the Fair Debt Collection Practices Act ("FDCPA") against both Defendants. *Am. Compl.* [#26] at 12. Plaintiff asserts that Defendants communicated information concerning a debt to someone other than him as the consumer and reported materially false information to the CRA. *Id.* at 13. Plaintiff seeks actual damages up to $1,000 for each violation of the statute and his reasonable

costs and attorney's fees, each in an amount to be proven at trial "or as may be taxed by the Court as costs in this matter." *Id.*

Third, Plaintiff asserts a claim against both Defendants for violating the Fair Credit Reporting Act ("FCRA"). *Am. Compl.* [#26] at 13. Plaintiff alleges that Defendants reported inaccurate information to the CRA, failed to investigate his consumer dispute to the CRA, failed to correct or delete the information, and failed to inform Plaintiff about negative information placed on his credit report within one month. *Id.* at 14. Plaintiff seeks actual and statutory damages, his reasonable costs and attorney's fees, and, on a showing of willfulness, punitive damages, each in an amount to be proven at trial. *Id.*

Fourth, Plaintiff asserts a claim of intentional interference with contract against both Defendants. *Am. Compl.* [#26] at 14. Plaintiff claims that Defendants induced Ms. Barrena to breach her Separation Agreement [#1-2] with Plaintiff by "using secrecy and deception to accomplish the [settlement] negotiations . . . in violation of applicable law and applicable terms and conditions of the Note." *Id.* at 15. Plaintiff avers that he has been damaged by Defendants' conduct by not receiving the benefit of indemnity, as contemplated by the Separation Agreement [#1-2]. *Id.* Plaintiff seeks damages compensating him "for the full value of this benefit . . . including release of the remaining principal balance of the loan, recission of all interest and late fees charged to his account, punitive damages, and his reasonable costs and attorney's [sic] fees as special damages." *Id.*

Lastly, Plaintiff asserts a breach of contract claim against Defendant U.S. Bank only. *Am. Compl.* [#26] at 11. Plaintiff asserts that Defendant U.S. Bank breached the terms of the Promissory Note [#1-1] accompanying the Imeson Loan by failing to give

Plaintiff notice as to his monthly payments as they came due, by disclosing his confidential information to a non-party to the contract, by reporting negative information to the CRA without justification or notice, and by violating the duty of good faith and fair dealing. *Id.* at 12. Plaintiff seeks compensation for damages allegedly suffered by such breach in an amount to be proven at trial. *Id.* In the present Motion [#28], Defendants seek dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.    Claims Against Both Defendant U.S. Bank and Defendant Nationstar**

**1.    Declaratory Judgment**

Plaintiff first seeks a declaratory judgment pursuant to Colo. Rev. Stat. § 13-51-101 that Defendant U.S. Bank is not the valid note holder of the Imeson Loan and that Defendant Nationstar is not validly authorized to administer the Imeson Loan.    *Am. Compl.* [#26] at 10.  Plaintiff avers that the Imeson Loan was not properly transferred from Bank of America to Defendants U.S. Bank and Defendant Nationstar and seeks a declaration by the Court that Plaintiff is entitled to inspect the original Promissory Note [#1-1] and that the Promissory Note [#1-1] is cancelled.  *Response* [#44] at 18.  Plaintiff

avers that Defendants' rights under the Promissory Note [#1-1] flow from the fact that Defendants are the note holder and authorized loan administrator, and that the only way to prove such status is for "the putative holder to prove it has possession of the Note." *Id.* at 19.

Under Colorado's Declaratory Judgment Act, the Court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. *See Bd. of Cnty. Comm'rs, La Plata Cnty. v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1053 (Colo. 1992) (stating that Colo. Rev. Stat. § 13-51-110 is a remedial statute calculated to afford parties judicial relief from uncertainty and insecurity with respect to their rights and legal relations).

The trial court has discretion to determine whether it should allow such an anticipatory declaratory judgment action to proceed. *See Grange Ins. Ass'n v. Hoehne*, 56 P.3d 111, 112-13 (Colo. App. 2002); *see also Progressive Cas. Ins. Co. v. Herring*, 22 P.3d 66 (Colo. 2001). In exercising its discretion, the trial court applies a three-part test. *Id.* First, there must be an actual, justiciable controversy, not the mere possibility of a future controversy. *Id.* Second, the declaratory judgment must fully and finally resolve the uncertainty and controversy as to all parties to the dispute. *Id.* Third, the declaratory action must be independent of and separable from the underlying action. *Id.*

Plaintiff asserts that the actual, justiciable controversy is "whether U.S. Bank is a note holder entitled to enforce the Imeson Loan, and . . . whether [Nationstar] is validly authorized to administer the Imeson Loan." *Am. Compl.* [#26] at 10. Plaintiff asserts that this uncertainty will be resolved by Defendants' production of the original documents that

"would answer those questions." *Id.* at 11.  Plaintiff contends that the Imeson Loan was not properly transferred from Bank of America to Defendants.  *Id.*  However, the Court can find nothing in Plaintiff's Amended Complaint [#26] that supports this conclusion. Plaintiff fails to argue why Defendants must legally prove their note holder status, and further, Plaintiff attached the Loan Modification Agreement [#1-3] with Nationstar to his Complaint [#1], which explicitly agrees that Defendant Nationstar is "validly authorized to administer the loan."  *See generally* [#1-3].

Further, the Promissory Note [#1-1] securing the Imeson Loan provides: "I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" [#1-1] at 1.  Plaintiff signed this document, thus agreeing to this statement.  *Id.* at 6.  Therefore, the Court can find no support in the Amended Complaint [#26] or other appropriately considered documents for the conclusion that the Promissory Note [#1-1] requires Plaintiff to be provided with the original notes of transfer before Plaintiff is obligated to fulfill his loan repayment obligations, and, as such, Plaintiff fails to allege facts which indicate an actual, justiciable controversy.  Plaintiff consequently fails to satisfy part one of the three-part declaratory judgment test under Colorado law.

Dismissal with prejudice is appropriate when a complaint fails to state a claim and granting leave to amend would be futile.  *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014).   Further, it is appropriate to dismiss without allowing amendment "where it is obvious that the plaintiff cannot prevail on the facts he has alleged."  *Id.*  For the reasons discussed above, it is patently obvious that Plaintiff cannot proceed with his claim under Colorado's Declaratory Judgment Act, and any leave to

amend would be futile because no actual, justiciable controversy exists.  Accordingly, the Court **recommends** that the Motion [#28] be **granted** as to Plaintiff's claim under Colorado's Declaratory Judgment Act and that this claim be **dismissed with prejudice**.

### 2.    FDCPA Claims Against Defendants U.S. Bank and Nationstar

Plaintiff next asserts that both Defendants violated the FDCPA by communicating confidential information regarding the Imeson loan to Ms. Barrena on multiple occasions. *Am. Compl.* [#26] at 13.  Plaintiff also asserts that Defendants reported materially false information to the CRA in violation of the FDCPA.  *Id.*  Plaintiff further avers that Defendant Nationstar is a debt collector per the FDCPA, as is Defendant U.S. Bank due to its operation as a business whose "principal purpose" is the collection of debts.  *Id.*

### a.    FDCPA Claim Against Defendant U.S. Bank

In the present Motion [#28], Defendant U.S. Bank seeks to dismiss this claim because it is not a debt collector as defined by § 1692a(6) of the FDCPA.  *Motion* [#28] at 13.  The FDCPA limits how debt collectors can pursue certain types of debt and creates a private right of action when they violate those limitations.  *See Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022).  A defendant can be held liable for violating the FDCPA only if it is a "debt collector" within the meaning of the FDCPA.  *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013).  A "debt collector" is defined as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due . . .  another."  15 U.S.C. § 1692a(6).  "Debt" is further defined as "any obligation . . . to pay money."  *Id.* § 1692a(5).  The Supreme Court has clarified that individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account are not "debt collectors"

subject to the FDCPA.  *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017).

The FDCPA establishes two alternative predicates for "debt collector status": (1) engaging in debt collection as the "principal purpose" of the entity's business; or (2) engaging in debt collection "regularly."  *James*, 724 F.3d at 1316.  In the present Motion [#28], Defendant U.S. Bank avers that it is the party that purchased the consumer debt, and the Deed of Trust confirms that it is the lender seeking to collect its own debt.  *Motion* [#28] at 13.  Thus, Defendant U.S. Bank asserts that it can bear no liability under the FDCPA, as Defendant Nationstar is the loan servicer, not Defendant U.S. Bank.   In opposition, Plaintiff focuses his argument on the first path to establish an entity's status as a "debt collector," i.e., that Defendant U.S. Bank's principal purpose is debt collection. *Am. Compl.* [#26] at 15.  Plaintiff avers that Defendant U.S. Bank only interacts with Plaintiff as trustee, and thus Defendant U.S. Bank is performing none of its usual banking functions, but "simply holding debt which it acquired to collect for the beneficiaries, squarely within the concerns of the statute."  *Response* [#44] at 15.

In determining the principal purpose, the Court considers the proportion of a company's operation which involves debt collection activities.  *Eastman v. NPL Cap., LLC*, No. 17-cv-03074-RBJ-KMT, 2019 WL 1080966, at *2 (D. Colo. Jan. 8, 2019); *see also Fox v. Citicorp Credit Servs., Inc.*, 16 F.3d 1507 (9th Cir. 1994).  In other words, a party is not a debt collector if only some of its business is debt collection.  *Eastman*, 2019 WL 1080966, at *3.  Merely alleging that an entity is involved in debt collection, in and of itself, "does not sufficiently move the needle on the proportion of its business that is debt collection."  *Id*.  Further, the fact that an entity tells a consumer that it is attempting to

collect a debt is not sufficient on its own to bring that entity within the purview of the FDCPA. *Garrett v. BNC Mortg.*, *Inc.*, 929 F. Supp. 2d 1120, 1127 (D. Colo. 2013).

Here, Plaintiff has merely alleged that Defendant U.S. Bank is a debt collector under the FDCPA in his Amended Complaint [#26] without making any allegations supporting the conclusion that Defendant U.S. Bank falls within the statutory definition of that term. The Amended Complaint [#26] includes no allegations indicating that either (1) Defendant U.S. Bank's principal business is the collection of debts, or (2) U.S. Bank regularly collects or attempts to collect debts owed to another. *See* 15 U.S.C. § 1692a(6).

Although Defendant U.S. Bank acquired the Imeson Loan after Plaintiff defaulted, the fact that an entity acquired a debt after the borrower defaulted on that debt is not sufficient to indicate that the entity that acquired the debt qualifies as a "debt collector" under the FDCPA. *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015). An entity acquiring a debt after default is only a "debt collector" where that entity otherwise meets the statutory definition. *Id.* at 1316.

In response to the present Motion [#28], Plaintiff merely argues that Defendant U.S. Bank only dealt with Plaintiff in connection with his debt and performed none of its usual banking functions and concludes that the Court "must accept Imeson's allegations as true, US Bank's 'principal purpose' is exactly what Imeson says it is." *Response* [#44] at 15. However, the tenet that the Court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Plaintiff has not pled any facts that point the Court to the legal conclusion that Defendant U.S. Bank falls within the statutory

purview of the FDCPA as a "debt collector," and the claim against Defendant U.S. Bank therefore fails.

The Court finds that Plaintiff has failed to state a claim for which relief can be granted under the FDCPA against Defendant U.S. Bank.  In order to support such a claim, Plaintiff would need to sufficiently plead facts that support the conclusion that Defendant U.S. Bank's "principal purpose" is debt collection or that it engages in debt collection "regularly."  *See James*, 724 F.3d at 1316.  Accordingly, the Court **recommends** that the Motion [#28] be **granted** as to Plaintiff's FDCPA claims against Defendant U.S. Bank and that the claims be **dismissed without prejudice**.  *See Knight*, 749 F.3d at 1190.

### b.    FDCPA Claims Against Defendant Nationstar

The Court next addresses Plaintiff's FDCPA claims against Defendant Nationstar, which does not contest that it is a debt collector for purposes of the FDCPA.  Plaintiff avers that both (1) Defendant Nationstar's reports to the CRA were materially false or misleading and (2) Defendant Nationstar's communications with Ms. Barrena regarding the Imeson Loan were unauthorized.  *Am. Compl.* [#26] at 13.  Defendant Nationstar asserts that no violation occurred because (1) Plaintiff has failed to allege facts supporting the conclusion that the reports to the CRAs were false and (2) Plaintiff authorized Ms. Barrena as a third party to his account.  *Motion* [#28] at 14.

Section 1692c of the FDCPA governs communications in connection with debt collection and prohibits, without the consent of the consumer given directly to the debt collector, communications regarding the collection of any debt, "with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  15

U.S.C. § 1692c.  To prevail on § 1692c claim, a plaintiff must prove four elements: (1) the plaintiff is a "consumer" under § 1692a(3); (2) the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a debt collector under § 1692a(6); and (4) through its acts or omissions, the defendant violated the FDCPA.  *Tavernaro*, F.4th 1062 at 1067.   At issue is part four of this test, whether "through its acts or omissions, the defendant violated the FDCPA."  *Id.*

### i.    15 U.S.C. § 1692e(8)

Plaintiff avers that Defendant Nationstar violated the FDCPA by reporting materially false information to the CRA, which constitutes prohibited conduct under § 1692e(8).  *Am. Compl.* [#26] at 13.   Section 1692e(8) prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  "[Section] 1692e(8) . . .  is rooted in the basic fraud law principle that, if a debt collector *elects* to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt.*"  Baker v. I.Q. Data Int'l, Inc.*, No. 14-cv-00114-WJM-MEH, 2015 WL 1945148, at *2 (D. Colo. Apr. 29, 2015) (citing *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008)) (emphasis in original).  Furthermore, § 1692e(8) does not apply to a debt collector who reports the debt and only thereafter learns of the dispute.  *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1189 (10th Cir. 2013).

Other circuits have held that false statements must be material to be actionable under the FDCPA.  *See Donohue v. Quick Collect*, 592 F.3d 1027, 1033 (9th Cir. 2010); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn v.*

*Triumph P'ships*, 557 F.3d 755, 757 (7th Cir. 2009). Although the Tenth Circuit has not explicitly resolved this issue, it has found, regarding a § 1692g claim, that "[t]he FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless." *Maynard v. Bryan W. Cannon, P.C.*, 401 F. App'x 389, 397 (10th Cir. 2010) (finding that an incorrect statement on its own does not violate § 1692g). The Court has interpreted *Maynard* to require materiality in the context of a § 1692g claim. *See D'Avanzo v. Global Credit & Collection Corp.*, No. 10-cv-01572-RPM-CBS, 2011 WL 2297697, at *4 (D. Colo. Apr. 18, 2011); *Miranda v. Praxis Fin. Sols., Inc.*, No. 13-cv-00931-WJM-MJW, 2014 WL 5504745, at *2 (D. Colo. Oct. 31, 2014).

Materiality is assessed in light of the purpose of the FDCPA, which is to "provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn*, 557 F.3d at 757-58. Thus, a false statement is material if it would impact the least sophisticated consumer's decisions with respect to a debt. *See id.* The least sophisticated consumer is someone not having the "sophistication of the average, everyday, common consumer." *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. 1997). That is, a plaintiff must show that the false statements *would* mislead the least sophisticated consumer, not that they actually misled her. *Hudspeth v. Cap. Mgmt. Servs., L.P.*, No. 11-cv-03148-PAB-MEH, 2013 WL 674019, at *9 (D. Colo. Feb. 25, 2013).

In short, in determining whether Plaintiff has alleged a cognizable claim under 1692e, the Court must determine whether he has adequately alleged that (1) Defendant Nationstar reported any false, deceptive, or misleading representation and, likely, (2) the

alleged communication was material, i.e., that it would impact the least sophisticated consumer's decisions with respect to a debt.   However, the Court need not explicitly determine whether the Tenth Circuit would adopt the materiality requirement for § 1692e(8), because Plaintiff has failed to allege facts supporting the conclusion that Defendant Nationstar reported any false, deceptive, or misleading representations. Plaintiff alleges that Defendant Nationstar violated the FDCPA by reporting late payments to CRAs "when their own loan statements show the loan as being current."   *Am. Compl.* [#26] at 13.   In support of this claim, Plaintiff alleges only that the January and August 2022 reports to the CRA contained late payment information.   *Id.* at 37.

However, Plaintiff alleged that he was in default numerous times in his Amended Complaint [#26] and the Loan Modification Agreement [#1-3] indicated that his *past due* amounts would be rolled into the principal.   *Am. Compl.* [#26] at 3-5.   Plaintiff also incorporated a statement from Defendant Nationstar from May 2022 indicating that Plaintiff owed over $10,000 in overdue payments.   *Ex. D* [#1-4] at 1.   Therefore, as far as the Court can surmise from the Amended Complaint [#26] and documents incorporated by reference, Plaintiff has failed to adequately allege that Defendant Nationstar made false, deceptive, or misleading statements to the CRA.   *See Santacruz v. Standley & Assocs., LLC*, No. 10-cv-00623-CMA-CBS, 2011 WL 1043338, at *4 (D. Colo. Mar. 17, 2011) (not reported) (finding that statement [by a debt collector] was substantially correct and, thus, was not a misrepresentation).   A court may properly grant a motion to dismiss on an FDCPA claim where the claim is not supported by factual allegations.   *Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533, 536 (10th Cir. 2018) (district court properly concluded that plaintiff's allegations in the complaint were insufficient to state

an FDCPA claim because they too were conclusory and not supported by factual allegations); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1239 (10th Cir. 2013) (dismissal was proper where plaintiff failed to allege sufficient facts to plausibly state a claim that defendant violated the FDCPA).

Thus, the Court finds that Plaintiff has not adequately alleged that Defendant Nationstar is liable under section 1692e(8) of the FDCPA. Additionally, Plaintiff has only alleged that two purportedly inaccurate reports were made, and based on the pleadings, the allegations do not show that these reports were incorrect. The Court notes that there is no indication that amendment would change these circumstances, and thus finds that amendment would be futile. *Knight*, 749 F.3d at 1190. Accordingly, the Court **recommends** that the Motion [#28] be **granted** as to the FDCPA section 1692e(8) claim against Defendant Nationstar and that the claim be **dismissed with prejudice**.

### ii.    15 U.S.C. § 1692c(b)

Next, Plaintiff avers that Defendant Nationstar violated § 1692c(b), which provides: "[A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Plaintiff avers that Defendant Nationstar communicated confidential information regarding the Imeson Loan to Ms. Barrena, who, according to Plaintiff, is not an authorized party. *Am. Compl.* [#26] at 4-5, 13. Defendant Nationstar asserts that Plaintiff authorized Ms. Barrena as a third party to his account regarding the Imeson loan,

and therefore any communications with her did not violate § 1692c(b).  *Motion* [#28] at 11, 14.[4]

The FDCPA broadly defines a "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  Plaintiff alleges that (1) Ms. Barrena was not a co-obligator on the Imeson Loan; (2) Ms. Barrena was not an authorized party on the Imeson Loan; and (3) Defendant Nationstar communicated confidential information regarding Plaintiff's debt during settlement negotiations on November 30, 2021.  *Am. Compl.* [#26] at 2, 4, 6.  The Court therefore finds that Plaintiff has alleged facts sufficient to allege a claim under 15 U.S.C. § 1692c(b) against Defendant Nationstar.

### c.    FDCPA Statute of Limitations

Defendants further assert that Plaintiff's FDCPA claims are time-barred.  *Motion* [#28] at 14.  Defendants argue that Plaintiff alleged that Defendant Nationstar disseminated private loan information to Ms. Barrena in November 2020, more than a year before Plaintiff filed the present action in September 2022.  *Id.* at 14.

The FDCPA has a one-year statute of limitations.  15 U.S.C. § 1692k(d).  The FDCPA's one-year limitations period begins to run when a would-be defendant violates the FDCPA, not when a potential plaintiff discovers or should have discovered the violation.  *Rotkiske v. Klemm*, 890 F.3d 422, 425 (3d Cir. 2018), *aff'd,* 140 S. Ct. 355

---

[4]  Defendant Nationstar points to Ms. Barrena's First Amended Complaint in the Pitkin County lawsuit against Nationstar and U.S. Bank and her allegation that "Imeson expressly authorized [Nationstar] to communicate with Ms. Barrena regarding the Deed of Trust."  *Motion* [#28-5] at 6.  While this court may take judicial notice of the records and opinions of other courts, it may not accept as true the facts recited therein.  *Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1251 (D. Colo. 2015).

(Dec. 10, 2019).  Plaintiff argues that some of the challenged communications with Ms. Barrena took place within the last year.  *Am. Compl.* [#26] at 13.  Plaintiff further contends that Colorado subjects a breach of contract claim to a three-year statute of limitations period, and thus the claim is timely.  *Id.*  However, Plaintiff has provided no legal authority holding that the statute of limitations period for a breach of contract claim is relevant in determining whether Plaintiff's FDCPA claim is time-barred, and the Court has found none.

The Court has recommended dismissal of Plaintiff's section 1692e(8) claim that Defendants' reports to the CRAs violated the FDCPA.  *See supra* § III.B.2.b.  Plaintiff's remaining FDCPA claim under section 1692c(b) rests on the assertion that Defendant Nationstar communicated confidential information regarding the Imeson Loan to Ms. Barrena.  Plaintiff asserts that "many of these occasions have taken place within the last year."  *Am. Compl.* [#26] at 16.  Plaintiff further claims, "as to the timing of these communications, Imeson lacks access to the specific communications defendants had with Barrena or her counsel, so he does not know when they took place."  *Response* [#44] at 16.

For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis.  *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010); *see also Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (nothing in the FDCPA suggests that "similar" violations should be grouped together and treated as a single claim for purposes of the Act's statute of limitations). Therefore, Plaintiff need only allege one violation of the FDCPA that occurred within the last year to state a claim.  *Id.*  Plaintiff asserts in his Amended Complaint [#26] that

Defendants and Ms. Barrena entered into a settlement agreement regarding the Imeson Loan on November 30, 2021, where Defendants discussed allegedly confidential information regarding the Imeson Loan.  *Am. Compl.* [#26] at 6.   Plaintiff filed the Complaint [#1] against Defendants on September 1, 2022.   These alleged confidential communications between Defendant Nationstar and Ms. Barrena during the settlement negotiation therefore occurred within one year before Plaintiff's filing and are not time-barred by the FDCPA.   Accordingly, the Court **recommends** that the Motion [#28] be **denied** as to the 15 U.S.C § 1692c(b) claim against Defendant Nationstar.

3.      FCRA

Plaintiff next asserts a violation of the FCRA against both Defendants.   Plaintiff avers that, specifically, Defendants violated § 1681, which requires that parties furnishing information about consumers to CRAs abide by certain guidelines.  *Am. Compl.* [#26] at 14; 15 U.S.C. § 1681.  Plaintiff asserts that Defendant Nationstar filed reports to the CRA on January 30, 2022 and May 3, 2022, both of which, according to Plaintiff, were incorrect. *Am. Compl.* [#26] at 8-9.  Plaintiff asserts that he filed disputes with the CRA, and despite such disputes, "neither defendant has undertaken any investigation of the same."  *Id.* Plaintiff avers that Defendant Nationstar's filed reports were not accurate because Defendant Nationstar failed to inform Plaintiff that a monthly payment was due from him at "any relevant time," and, "absent a notice of a deadline, a payment cannot be 'late' in any plain English meaning of the word."  *Response* [#44] at 13.  Plaintiff further avers that the Imeson Loan was current at the time Defendants filed the report with the CRA.  *Id*.

Plaintiff refers to "Defendants" filing false reports but makes no factual allegations that Defendant U.S. Bank filed any such reports.  *Am. Compl.* [#26] at 9. Plaintiff

concludes that "the Lender Parties have violated each and every one of the foregoing requirements [of section 1681]" but includes no reference to a report filed by Defendant U.S. Bank to a CRA.  *Id.* at 14.  The only mention in the Amended Complaint [#26] of such a report being provided to a CRA is by Defendant Nationstar.  *Id.* at 8-9.  Because Plaintiff has failed to allege facts to support the conclusion that Defendant U.S. Bank ever filed a report with a CRA regarding the Imeson Loan, Plaintiff has failed to state a claim under the FCRA against Defendant U.S. Bank.  To state a claim, Plaintiff would need to allege facts that show that Defendant U.S. Bank also filed a report to the CRA.  Thus, the Court **recommends** that the Motion [#28] be **granted** as to Plaintiff's FCRA claim against Defendant U.S. Bank and that the claim be dismissed **without prejudice**.  *Knight*, 749 F.3d at 1190

In addition, Defendant Nationstar seeks dismissal of the FCRA claim because furnishers are only required to modify, delete, or block reported information they determine is inaccurate, incomplete, or cannot be verified through their investigation. *Motion* [#28] at 14.  Consequently, Defendant Nationstar argues that the information is only inaccurate if it is patently false or materially misleading, and because the Imeson Loan was in default at the time of the report to the CRA, no claim can be stated under the FCRA.  *Id.* at 15.  Defendant Nationstar further avers that Plaintiff has failed to allege any facts regarding what negative payment information Defendant Nationstar reported to the CRA and, also, that Plaintiff admitted the Imeson Loan was in default in January 2022, and thus, the report filed with the CRA contained only correct information.  *Id.* at 15-16.

The FCRA requires that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce [. . .] in a manner which is fair and

equitable to the consumer." *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1009 (D. Colo. 2012); 15 U.S.C. § 1681(b).  Congress recognized that part of the process lies in the hands of "furnishers of information."  15 U.S.C. § 1681s–2.  Section 1681s–2 generally prohibits furnishers from transmitting inaccurate information to CRAs.  15 U.S.C. § 1681–2(a)(1).  The statute requires a furnisher to correct and update information it sends to CRAs such that it is "complete and accurate."  *Id.*  Under this section, a furnisher of information who has received notice of a dispute from a CRA is required to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009). ⬝
⬝
Further, § 1681s–2 limits a private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA.  15 U.S.C. § 1681s–2(c) ("except [for circumstances not relevant here], sections 1681n and 1681*o* of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder").  Plaintiff's claim arises under subsection (b), alleging that Defendant Nationstar failed to fulfill its investigative duties, and thus, Plaintiff's claim is a proper basis for a private lawsuit.  *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).

Plaintiff alleges that he filed disputes "with the credit bureaus[,] but there is no indication that either of the [Defendants] has undertaken any investigation of the same." *Am. Compl.* [#26] at 9.  Plaintiff further asserts that, "in spite of notice of Imeson's dispute

provided by Experian to Defendants, neither has taken any action to further investigate the dispute." *Id.*  In other words, Plaintiff filed a dispute with the CRA (Experian) and the CRA (Experian) informed Defendant Nationstar of such dispute. *Id.* A furnisher's duty to investigate arises only after a CRA notifies the furnisher of a dispute and, conversely, does not arise when notice is provided "directly from a consumer." *See Pinson*, 316 F. App'x at 751; *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002).  Here, Plaintiff alleges that the CRA notified the furnisher, Defendant Nationstar, of Plaintiff's dispute, and therefore, Defendant Nationstar had a duty to investigate. *Am. Compl.* [#26] at 9.   If the investigation performed by the furnisher of information reveals that the information reported was inaccurate, the furnisher must "promptly notify each consumer reporting agency to which the person furnished the inaccurate information of that determination and provide to the agency any correction to that information that is necessary to make the information provided by the person accurate."  15 U.S.C. § 1681s-2.

Nothing in the Amended Complaint [#26] supports a conclusion that Defendant Nationstar took the action required pursuant to the statute to investigate the reports and, if necessary, correct any inaccurate information.  Whether the reports in dispute were actually accurate is immaterial at this point, because Defendant Nationstar has an affirmative duty under the FCRA to investigate whether the report was in fact accurate once the CRA notified it of the dispute. *See Stich v. BAC Home Loans Servicing,* LP, No. 10-cv-01106-CMA-MEH, 2011 WL 1135456, at *6 (D. Colo. Mar. 29, 2011) (stating that notification of a dispute to CRA triggers the duty to investigate by furnishers).  It is not sufficient for Defendant Nationstar to claim the report is accurate in its Motion [#28]

without abiding by the investigative procedures mandated by the statute.  Taking the averments in the Amended Complaint [#26] as true, Plaintiff has successfully stated a claim under §1681s-2 against Defendant Nationstar.  Accordingly, the Court **recommends** that the Motion [#28] be **denied** as to Plaintiff's claim under the FCRA against Defendant Nationstar.

### 4.  Intentional Interference with Contract

Plaintiff next asserts an intentional interference with contract claim against Defendants U.S. Bank and Nationstar.  Plaintiff alleges that Defendants had knowledge of Plaintiff's Separation Agreement [#1-2] with Ms. Barrena, which required her to indemnify Plaintiff with respect to future litigation involving the Property.  *Am. Compl.* [#26] at 15.  Plaintiff avers that Defendants induced Ms. Barrena to breach her indemnity obligations via the Settlement Agreement entered into by Defendants and Ms. Barrena.  *Id.*  Plaintiff avers that Defendants did so by "using secrecy and deception to accomplish the negotiations without Imeson even being aware they were taking place in violation of applicable law and applicable terms and conditions of the Note."  *Id.*  Plaintiff asserts that he was injured by this conduct because he did not receive the benefit of the indemnity under the Separation Agreement [#1-2].  *Id.*

To sufficiently plead a claim of intentional interference with contract, a plaintiff must allege that: (1) the defendant was aware of the existence of the contract; (2) that the defendant intended that one of the parties to the contract breach it; (3) that the defendant induced the party to breach the contract or make it impossible for her to perform; and (4) that the defendant "acted 'improperly' in causing the breach."  *See Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (applying Colorado law).

A plaintiff cannot be entitled to relief on a claim of intentional interference with contract unless he adequately alleges that the defendant intentionally and improperly induced a party to breach the contract or improperly made it impossible for a party to perform.  *Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 871 (Colo. 2004).  Colorado courts have not attempted to rigidly define "improper" because it is so clearly dependent on context and circumstances.  *See Trimble v. City & Cnty. of Denver*, 697 P.2d 716, 726 (Colo. 1985).  However, courts have looked to the Restatement (Second) of Torts § 767 (Am. Law Inst. 1965) in this regard and its enumeration of potentially relevant factors, which include: "the nature of the actor's conduct, the actor's motive, the interests of the other with which the actor's conduct interferes . . .  and the relation between the parties."  *Id.*; *see also Warne v. Hall*, 373 P. 3d 588 (Colo. 2016).

The Court finds that Plaintiff has failed to sufficiently allege a claim for intentional interference with contract.  Nothing in the Amended Complaint [#26] supports the conclusion that Defendants intentionally interfered with Plaintiff and Ms. Barrena's Separation Agreement [#1-2].  Plaintiff merely conclusorily alleges that Defendants induced Ms. Barrena into breaching the Separation Agreement [#1-2] without providing any facts supporting this conclusion.  *See Am. Compl.* [#26] at 15.  Nothing in the Promissory Note [#1-1] prohibits Defendants from accepting payment from Ms. Barrena.  In addition, Plaintiff has not shown how an acceptance of payment from Ms. Barrena could be construed as an inducement for Ms. Barrena to breach her indemnity obligations.  *See generally* [#21-4].  Further, there are no facts alleged in the Amended Complaint [#26] supporting the conclusion that Defendants improperly made it impossible for Ms. Barrena to perform her indemnity obligations.  Plaintiff merely states: "the Lender Parties

induced Barrena to breach her obligations under the Separation Agreement," and "the Lender parties . . . took other actions intended to intimidate Imeson and cow him into simply paying the remainder of the loan balance." *Am. Compl.* [#26] at 15.  The Court cannot construe these allegations in the Amended Complaint [#26] as facts sufficient to support the legal conclusion that Defendants in any way induced Ms. Barrena to ignore her obligations under the Separation Agreement [#1-2] with Plaintiff.

In response to the Motion [#28], Plaintiff contends:

> When Defendants released the Deed of Trust in exchange for less than full performance of the loan obligations she had assumed . . . Defendants knowingly and intentionally provided Barrena every incentive and reason to simply ignore them.  They intended to do it so they could settle the lawsuit she had brought against them.  As a result, she kept the house, free and clear.

*Response* [#44] at 17-18.  Again, Plaintiff has not directed the Court's attention to anything in either the Amended Complaint [#26] or the documents incorporated by reference to support the conclusion that Ms. Barrena assumed any loan obligations or that Defendants induced her to ignore the obligations she allegedly owed to Plaintiff.  While the Separation Agreement [#1-2] provides that Ms. Barrena was obligated to either re-finance the loan or sell the property, there is no allegation that it explicitly obligated her to assume the outstanding debt on his loan.  *Separation Agreement* [#1-2] at 4.  Assuming, arguendo, that Ms. Barrena did have such an obligation to repay the Imeson Loan, Plaintiff has failed to demonstrate how Defendants induced Ms. Barrena to violate any such provision of the Separation Agreement [#1-2].  What is missing from Plaintiff's Amended Complaint [#26] is an explanation as to how the Settlement Agreement [#21-4] between Ms. Barrena and Defendants induced Ms. Barena to violate her contractual obligations to Plaintiff.  While it may be the case that Ms. Barrena owed certain duties to Plaintiff per the Separation

Agreement [#1-2], it is unclear from the Amended Complaint [#26] how Defendants are responsible for this alleged breach.

When the allegations in a complaint, however true, cannot state a claim upon which relief is entitled, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (quoting 5 Wright & Miller § 1216, at 233-234). Plaintiff has not adequately alleged an intentional interference with contract claim for which the Court may grant relief. To state such a claim, Plaintiff would need to go beyond mere conclusory statements and amend the Amended Complaint [#26] to allege that Defendants had the requisite intent and that they induced Ms. Barrena to breach the contract. *See Hertz*, 576 F.3d at 1118; see *also Mitchell v. Roberts*, 43 F.4th 1074, 1083 (10th Cir. 2022) (stating that a district court should normally grant dismissal without prejudice, absent "legal prejudice" to the defendant). Accordingly, the Court **recommends** that the Motion [#28] be **granted** as to Plaintiff's intentional interference of contract claims against Defendants and that the claims be **dismissed without prejudice**.

**B.      Breach of Contract Claim Against Defendant U.S. Bank**

Lastly, Plaintiff alleges a breach of contract claim solely against Defendant U.S. Bank. Plaintiff asserts that, as of March 2022, the Imeson Loan was in full compliance with the contract (i.e., the Promissory Note [#1-1]) and, "following entry of the Loan Modification Agreement in 2018 and continuing to the present day, U.S. Bank has breached the terms of the Note." *Am. Compl.* [#26] at 12. Plaintiff asserts that Defendant U.S. Bank breached the terms of the Promissory Note [#1-1] in four ways: (1) by reporting negative information to the CRA without notice; (2) by failing to give Plaintiff notice as to

his monthly payments as they came due; (3) by disclosing Plaintiff's confidential information to a non-party; and (4) by breaching the duty of good faith and fair dealing that is implied in every Colorado contract.  *Id.*

To state a claim for breach of contract, a plaintiff must assert: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendants; and (4) resulting damages to the plaintiff. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  At issue in the present Motion [#28] are the second and third elements.  Defendant U.S. Bank avers that Plaintiff cannot state a claim for breach of contract because Plaintiff failed to perform his duties under the contract and has no justification for nonperformance and because Defendant U.S. Bank did not breach the terms of the Promissory Note [#1-1].  For the following reasons, the Court agrees.

In the Promissory Note [#1-1], Plaintiff agreed to pay $1,400,000 ("the principal"), plus interest, "to the order of Lender."  [#1-1] at 1.  Plaintiff admitted to defaulting on the Imeson Loan in his Amended Complaint, *see Am. Compl.* [#26] at 3-5, attached a Loan Modification Agreement [#1-3] indicating his overdue payments would be rolled into the principal account, and attached a mortgage statement sent by Defendant Nationstar to Plaintiff, indicating that he was more than thirty days behind on his payments, *see* [#1-4].  Thus, the Amended Complaint [#26], appears to demonstrate that Plaintiff breached the terms of the Promissory Note [#1-1] by defaulting on the loan.  According to well-settled case law, Plaintiff's failure to perform his obligations under the contract would excuse any breach by Defendant U.S. Bank.  *See Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 859 (Colo. App. 2007) (one party's failure to perform under a contract precludes

that party's demand for performance by the other party); *Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 641 (Colo. App. 1999) (one party's failure to satisfy contractual conditions would excuse performance by the other party). However, the Court need not make a determination regarding Plaintiff's breach in order to conclude that Plaintiff has failed to sufficiently state a breach of contract claim.

Assuming, arguendo, that Plaintiff had upheld his end of the contract, Plaintiff fails to allege facts to support the conclusion that Defendant U.S. Bank breached the Promissory Note [#1-1]. Under Colorado law, contracts "should be interpreted consistently with the well-established principles of contractual interpretation." *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). Courts "must examine [contractual] terms and attempt to determine the intent of the parties." *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 973 (Colo. 2005); *see also Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (applying Colorado principles of contract interpretation in a breach of contract dispute). What courts are after is the parties' mutual intent. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). Absent an indication that the parties chose to deviate from plain meaning, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used." *East Ridge*, 109 P.3d at 974. In other words, common usage prevails, and "strained constructions should be avoided." *Allstate*, 52 P.3d at 819.

When a contractual provision unambiguously resolves the parties' dispute, the interpreting court's task is over. *Level 3 Commc'ns*, 535 F.3d at 1154. Determining whether "a written contract is ambiguous is a question of law." *East Ridge*, 109 P. 3d at

975.  It is not enough that the parties disagree about the meaning.  *Id.*  "Rather, a contract is ambiguous [only] if it is fairly susceptible to more than one interpretation."  *Id.* (quotation omitted).  The Court will thus look at the plain and unambiguous terms of the Promissory Note [#1-1] in determining Defendants' obligations under the Promissory Note [#1-1] and whether Defendants breached such contractual obligations as a matter of law.  Doing so on a motion to dismiss is proper.  *See McCollam v. Sunflower Bank, N.A.*, 598 F. Supp. 3d 1104, 1111 (D. Colo. 2022) (granting a motion to dismiss for failure to plead a breach of contract claim based on the court's interpretation of unambiguous terms) (applying Colorado law); *United Food & Com. Workers Int'l Union, Loc. 7, AFL-CIO v. Kaiser Found. Health Plan of Colorado*, No. 21-cv-2767-WJM-STV, 2022 WL 4448495, at *4 (D. Colo. Sept. 23, 2022) (holding that it is well-settled law in Colorado that dismissal of a breach of contract claim requires that the Court be presented with an unambiguous contract, and that the plaintiff has failed to state a claim under the terms of such a contract).

First, there are no provisions in the Promissory Note [#1-1] that prohibit Defendant U.S. Bank from communicating with Ms. Barrena.  *See generally Promissory Note* [#1-1].  Plaintiff avers that relevant federal and state law are incorporated into the contract, and thus, even though the Promissory Note [#1-1] may not explicitly prohibit Defendant U.S. Bank from communicating with Ms. Barrena regarding private loan information, the FDCPA prevents Defendant U.S. Bank from doing so.  *Am. Compl.* [#26] at 12; *Response* [#44] at 4.  However, as analyzed above, Plaintiff has not adequately alleged that Defendant U.S. Bank is a debt collector for purposes of the FDCPA, and therefore has not adequately alleged a violation of any such relevant federal law purportedly

incorporated into the contract.  Plaintiff has only asserted this breach of contract claim against Defendant U.S. Bank, and, consequently, any communications between Ms. Barrena and Defendant Nationstar are irrelevant to the breach of contract claim.

Additionally, the Promissory Note [#1-1] does not require Defendant U.S. Bank to provide Plaintiff with monthly statements, and, to the contrary, the Promissory Note [#1-1] provides only that: "I will pay principal and interest by making a payment every month. . . . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note."  [#1-1] at 1.  With reference to notice, the Promissory Note [#1-1] only provides: "The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change." *Id.*  at 2.  These provisions in the Promissory Note [#1-1] are unambiguous.  The Amended Complaint [#26] fails to allege any facts asserting that both Defendant U.S. Bank changed the interest rate on the Imeson Loan and failed to provide Plaintiff with notice.  Rather, the only change to the Imeson Loan Plaintiff alleges is when Plaintiff entered into the Loan Modification Agreement [#1-3]. *Am. Compl.* [#26] at 4.  Further, the Court can find no provision in the Promissory Note [#1-1] that prohibits Defendant U.S. Bank from reporting information to the CRAs without notifying Plaintiff.  Consequently, it is not possible for Defendant U.S. Bank to breach a term of the contract that does not exist.  Therefore, the Amended Complaint [#26] fails to sufficiently allege that Defendant U.S. Bank breached any notice provisions of the contract.

Lastly, still assuming, arguendo, that Plaintiff was not in breach of the Promissory Note [#1-1], the Amended Complaint [#26] fails to sufficiently allege facts to support the

conclusion that Defendant U.S. Bank violated the duty of good faith and fair dealing.  In Colorado, an implied duty of good faith and fair dealing exists within every contract.  *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003).  "Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'"  *Amoco Oil Co.*, 908 P.2d at 498 (quoting *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994)).  The implied duty of good faith and fair dealing cannot, "[h]owever, . . . contradict terms or conditions for which a party has bargained."  *Amoco Oil Co.*, 908 P.2d at 498 (citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989)).  "Nor does the duty . . . inject substantive terms into the parties' contract."  *Id*. at 507 (internal quotation marks omitted).  Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement.  *Id*. (quotation marks omitted).

Courts have found that a party breaches the duty of good faith and fair dealing when the party exercises discretion found within the contract *to the detriment* of the other party.  *See ADT Sec. Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 295 (Colo. App. 2007) (to prevail on claim asserting breach of the implied covenant of good faith and fair dealing a plaintiff must establish that the defendant exercised the discretion granted to it under the contract and deprived plaintiff of the benefit of the contract as a result); *Wells Fargo*, 872 P.2d at 1363 (finding a breach of duty of fair dealing and good faith where the defendant used its biased in-house appraiser to decrease the value of property by over 30 percent, thereby triggering default and requiring borrowers to pledge more collateral).  Plaintiff fails to allege what Defendant U.S. Bank did to contradict the terms or conditions for which Plaintiff bargained.  Plaintiff further fails to identify what

implied discretion Defendant U.S. Bank exercised that was to Plaintiff's detriment.

Consequently, given the explicit terms of the Promissory Note [#1-1] and Plaintiff's own admissions of default in his Amended Complaint [#26], Plaintiff has failed to demonstrate that he performed the contract, and, even if he could sufficiently allege such a fact, Plaintiff has failed to sufficiently allege that Defendant U.S. Bank breached the terms of the Promissory Note. Considering both the Amended Complaint [#26] and the Promissory Note [#1-1], the Court finds amendment would be futile. *Rosenfield*, 681 F.3d at 1189. Accordingly, the Court **recommends** that the Motion [#28] be **granted** as to Plaintiff's breach of contract claim against Defendant U.S. Bank and that this claim be **dismissed with prejudice**.[5]

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#28] be **GRANTED in part and DENIED in part**. Specifically, the Court **recommends** that the Motion [#28] be **granted** as to the declaratory judgment claim against Defendants U.S. Bank and Nationstar, the FDCPA § 1692e(8) claim against Defendant Nationstar, and the breach of contract claim against Defendant U.S. Bank and that these claims be **dismissed with prejudice**. Further, the Court **recommends** that the Motion [#28] be **granted** as to the FDCPA claim against Defendant U.S. Bank, the FCRA claim against Defendant U.S. Bank, and the intentional interference with contract claim against Defendants and that these claims be **dismissed without prejudice**. Further, the Court **recommends** that the Motion [#28] be

---

[5] Defendants also seek dismissal of Plaintiff's breach of contract claim because it is preempted by the FCRA. *Motion* [#28] at 12. Because the Court recommends dismissal of the breach of contract claim on other grounds, it need not address this argument.

**denied** as to the FDCPA § 1692c(b) claim against Defendant Nationstar and the FCRA claim against Defendant Nationstar.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: April 11, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge